UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| MICHELLE MAY SHIPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:12-CV-005-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

The Commissioner of Social Security denied Plaintiff Michelle May Shipp's application for disability insurance benefits, and Shipp filed this action seeking review of the Commissioner's decision. The undersigned has considered the parties' arguments and the administrative record and now recommends that the court affirm the Commissioner's decision and dismiss Shipp's Complaint with prejudice.

**I.     Statement of the Case**

Shipp previously worked as a customer service representative, floral designer, file clerk, merchandise displayer, and jewelry inventory clerk. (Tr. 51, 126.) During the application process she claimed she quit working in April 2009 when she was forty-seven years old and that she was limited in her ability to work because of fibromyalgia and depression. (Tr. 108, 124.) Fibromyalgia is a chronic condition recognized by the American College of Rheumatology; it is diagnosed after eliminating other conditions and is based on findings of a history of widespread pain with tenderness in at least eleven of eighteen sites known as trigger or tender points. *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003) (citation omitted); SSR 12-2p, 2012 WL 3104869 (July 25, 2012).

Although none of Shipp's physicians indicated a finding of eleven tender points, Shipp's family practice physician diagnosed Shipp with fibromyalgia in August 2009 when she complained of diffuse joint and muscle pain. (Tr. 185.) In November 2009 a rheumatologist noted that examination of Shipp showed tender points but no overt signs of inflammatory symptomotology. (Tr. 189.) He further noted that he thought Shipp's depression was playing a role in her symptoms of pain and fatigue and that some of her symptoms could be due to hormone withdrawal, but he also thought her history and examination "fit with" a diagnosis of fibromyalgia. *Id.* He encouraged Shipp to begin an exercise program, increase the dosages of her medications, and consider low dose hormone replacement therapy. *Id*. The rheumatologist examined Shipp again in January 2011. (Tr. 236.) He noted that the medications prescribed for Shipp's fibromyalgia were "helping her" and she found them "of benefit." *Id*. He prescribed medication to improve Shipp's quality of sleep, encouraged exercise, ordered x-rays to determine whether rheumatoid arthritis was a factor in Shipp's symptoms, and scheduled a six-month followup. *Id*. An x-ray of Shipp's spine showed "very mild lumbar spondylosis" but no acute findings. (Tr. 238.) An x-ray of her hands showed "very slight" hardening and "slight narrowing" in some of the joints and slight soft tissue prominence around the right thumb. (Tr. 239.) An x-ray of her feet showed slight hardening in one of her toes and minor narrowing and demineralization. *Id*. The x-rays were otherwise normal. (Tr. 238–39.)

At a hearing before an administrative law judge (ALJ), Shipp testified that she worked from November 2010 to February 2011 as a file clerk for her rheumatologist. (Tr. 37–38.) She further testified that she and her husband own and run a pond supply store and that she works part-time at the store answering the telephone and working the cash register. (Tr. 37.) She claimed, however,

that she is unable to work full-time because of chronic fatigue, forgetfulness, and inability "to do the heavy work that comes along with the pond business." (Tr. 39-40.) Shipp further claimed she spent most of her time sleeping and that she experienced chronic muscle and joint pain, swelling in her wrists and ankles, problems using her hands, and problems with her short-term memory. (Tr. 40, 45, 48.)

The ALJ determined that Shipp was not disabled because she was capable of performing limited light work in jobs that exist in significant numbers in the national economy. (Tr. 27–28.) The appeals council denied Shipp's request for review (Tr. 1–3), and Shipp filed this action.

## II.   Standard of Review

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*.; *see* 20 C.F.R. § 404.1505(a) (2012).

The Commissioner determines whether a claimant is disabled through application of a five step sequential evaluation. 20 C.F.R. § 404.1520. The ALJ decides whether the applicant (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*.

3

The court's role in reviewing a Social Security appeal is limited to determining whether the Commissioner applied the proper legal standards and whether the record contains substantial evidence to support the decision. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations and citation omitted). A finding of no substantial evidence is appropriate only if no credible evidentiary choices exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

**III.    Discussion**

    A.    *Shipp's Points of Error*

Shipp claims the ALJ erred at step three of the sequential evaluation process, failed to analyze the combined effect of her impairments, and erred in assessing her credibility.

    B.    *The ALJ's Step Three Determination*

At step three of the sequential evaluation the Commissioner is required to compare the claimant's impairment(s) with listings contained in appendix 1 of the regulations that are considered severe enough to disable an individual. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). If the Commissioner determines that the claimant's impairment(s) meet the duration requirement in the Social Security Act and that they also meet or medically equal the criteria of one of the listings in appendix 1, the claimant is presumed to be disabled and qualifies for benefits without further inquiry. *Id.* at 390. The burden of proof, however, is on the claimant; a claimant who contends his impairments are medically equivalent to a listing, must produce medical findings that support each criteria of the listing at issue. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.

4

1990) (citation omitted) (applying standard to plaintiff's assertion that his impairments were equivalent to a listing).

At the hearing Shipp's attorney argued that Shipp exhibited many symptoms of chronic fatigue syndrome (CFS) and urged the ALJ to "apply the rulings for chronic fatigue to the analysis of the fibromyalgia and find that she's disabled as a result of the fibromyalgia." (Tr. 35.) Shipp now points to Social Security Ruling 99-2p, which sets forth the standard under which an ALJ must evaluate a claimant's CFS. 99-2p, 1999 WL 271569, *1 (April 30, 1999). The ruling directs that CFS, when accompanied by appropriate medical signs or laboratory findings, is a medically determinable impairment and should be evaluated under the sequential evaluation process. *Id.* at *4.

Shipp claims she suffers from symptoms that are indicative of a diagnosis of CFS, including short-term memory loss and concentration deficits; muscle pain and weakness; post-exertional malaise; sleep disturbances; and depression and anxiety and that the ALJ was therefore required to determine at step three whether her impairments were medically equivalent to the listing for CFS.

Shipp's arguments are misplaced. First, no doctor diagnosed Shipp with CFS or indicated a suspicion that her symptoms suggested a diagnosis of CFS, and Shipp did not allege that she suffered from CFS during the application process. Shipp's doctors diagnosed her with fibromyalgia, and she alleged disability on account of depression and fibromyalgia. (*See, e.g.*, Tr. 184, 219, 236 (doctors diagnosing Shipp with fibromyalgia); Tr. 124 (Shipp alleging disability because of fibromyalgia and depression).) Further, at the hearing, Shipp's attorney urged the ALJ to find that Shipp was disabled as a result of fibromyalgia. (Tr. 35.) In the absence of any evidence

5

that Shipp suffered from CFS, the ALJ had no reason to discuss CFS in his decision. An ALJ may not make "[his] own independent medical assessments." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). "The ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (citation omitted).

Second, as the Commissioner argues, there is no listing in the regulations for CFS. *See* SSR 99-2p, 1999 WL 271569 *4 (noting that "CFS is not a listed impairment"). Further, Shipp has not pointed to any other listing that the severity of her impairments meet or equal. She has therefore failed to meet the burden of showing equivalency to a listing. *See Selders*, 914 F.2d at 619 (noting the claimant's burden to show equivalency).

The ALJ nonetheless considered Shipp's symptoms, including those she now claims are analogous to those found in individuals who suffer from CFS. For example, he considered her allegations of muscle and joint pain; fatigue; difficulty sleeping; weight loss; depression; and anxiety as well as findings of tender points and other symptoms that are characteristic of both CFS and fibromyalgia. (Tr. 19–21.) Despite Shipp's symptoms, the ALJ determined that her impairments did not meet or medically equal a listing in the regulations. (Tr. 21.) The ALJ's determination is supported by a state agency medical consultant who reached the same conclusion. (Tr. 21–22, 64–66.)

 C. *Combined Impairments*

Shipp argues the ALJ is required to consider the combined effect of all of the claimant's impairments and that the ALJ in this case failed to do so. She supports her argument by pointing to a number of her subjective complaints, including her post-exertional malaise; muscle

6

pain and weakness; sleep disturbance; depression and anxiety; and short-term memory loss and problems with concentration.

As Shipp argues, the ALJ is required to consider the combined impact of the claimant's impairments throughout the disability determination process. 20 C.F.R. § 404.1525. However, as the Commissioner argues, the ALJ expressly considered Shipp's symptoms and included both exertional and non-exertional limitations in his residual functional capacity assessment. The ALJ considered Shipp's allegations of muscle and joint pain; fatigue; difficulty sleeping; weight loss; forgetfulness; and depression and anxiety. (Tr. 19–21, 25.) He then specifically accommodated Shipp's allegations of mental fatigue and forgetfulness by limiting her to performing light work that was non-complex in nature. (Tr. 25.) He accommodated her allegations regarding physical limitations by limiting her to light work that required no climbing and only occasional crawling, kneeling, squatting, stooping, and crouching. *Id*. The ALJ's determination is supported by substantial evidence.

As the ALJ noted, Shipp's depression and anxiety were mild and controlled with medication. Because there was little evidence from Shipp's treating physicians about her mental limitations, she was referred to Arun Patel, M.D., for evaluation. (Tr. 20.) Dr. Patel noted that Shipp had a history of severe depression. (Tr. 191.) He also noted, however, that Shipp reported that her symptoms had improved with medication and were only mild and occasional. *Id*. Dr. Patel also reported that Shipp's thought process was organized and logical; her recent and remote memory were intact; and she was oriented to time, place, and person. (Tr. 192–93.) Finally, he assigned Shipp a global assessment of functioning (GAF) of 70. (Tr. 193.) An individual assigned a GAF of 70 is an individual who functions well in social, occupational, and educational settings and

7

experiences "some mild symptoms" rather than moderate or serious mental limitations. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). The foregoing evidence is more than a scintilla of evidence supporting the ALJ's determination that Shipp is capable of performing non-complex work despite her allegations of debilitating mental limitations.

Likewise, more than a scintilla of evidence supports the ALJ's determination that Shipp is physically capable of performing limited light work. Light work involves lifting no more than twenty pounds at a time, frequently lifting or carrying objects weighing up to ten pounds, and either (1) a "good deal of walking" or standing or (2) sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). Shipp reported on application documents that she was able to walk one block and that she did housework, including laundry, dusting, washing dishes, and tidying. (Tr. 140, 142, 145, 166.) Six months after her alleged onset date of disability she reported to her physician that she designed and built fountains. (Tr. 188.) She also worked as a file clerk for twenty hours per week for a four-month period and worked approximately ten to twenty-five hours per week answering the telephone and running the cash register at her pond supply store. (Tr. 37–38, 40–41, 191.) In addition, she attended Tai Chi classes twice a week, occasionally shopped at stores and online, ran errands, and cared for her parents when they were ill. (Tr. 41, 46, 141, 143.) Finally, although Shipp testified that she experienced difficulty using her hands, examination notes and objective medical findings from the x-rays she underwent in January 2011do not support her claims. (Tr. 47–48, 184–89, 219–20, 237, 239.)

D. *Credibility*

Shipp faults the ALJ for noting her non-compliance with treatment. She contends

8

the record contains conflicting evidence related to her alleged failure to follow prescribed treatment. She further contends, pointing to Social Security Ruling 82-59, that she was never advised of the consequences of failing to follow prescribed treatment or the effect that non-compliance would have on her eligibility for benefits. Shipp argues that even if the court finds that she failed to follow prescribed treatment, her case should be remanded because she was not advised that failing to follow prescribed treatment would negatively impact her application for benefits.

Shipp's contentions must be rejected. First, Ruling 82-59 does not apply in this case. The ruling is applicable only in cases in which it is determined that a claimant has a *disabling* impairment. SSR 82-59, 1982 WL 31384, *1 (emphasis in the original). The ruling instructs that a claimant with a disabling impairment must follow prescribed treatment if such treatment could be expected to restore his ability to work. *Id.*; *see also* 20 C.F.R. § 404.1530 (same). Ruling 82-59 specifically directs that a claimant who fails without justifiable cause to follow prescribed treatment will be denied benefits, but such a claimant must be advised of the consequences of failing to follow prescribed treatment before benefits are denied. SSR 82-59, 1982 WL 31384, *1, *5. The ALJ found that Shipp was not disabled. Ruling 82-59 is therefore inapplicable to this case, and Shipp's argument is accordingly without merit. *See Molina v. Astrue*, 674 F.3d 1104, 1114 n.6 (9th Cir. 2012) (rejecting the same argument on the same grounds).

Second, the ALJ considered Shipp's non-compliance with treatment in connection with his assessment of her credibility, and he was entitled to do so. The ALJ must determine the truthfulness and reliability of the claimant's subjective allegations. *Scharlow v. Schweiker*, 655 F.2d 645, 648–49 (5th Cir. 1981). The Court of Appeals for the Fifth Circuit has specifically held that an ALJ may consider a claimant's failure to follow prescribed treatment as a factor in the

9

credibility analysis. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ noted that Shipp "self-discharges or titrates her own medication dosages" and found "such practice inconsistent with allegations of debilitating symptoms, when the record documents that such medications are effective . . . when used as prescribed." (Tr. 24.) The ALJ also noted Shipp's non-compliance with advice to quit smoking. *Id*. Finally, he noted Shipp's claim that financial constraints prevented her from seeking medical treatment, but he also noted records that show she was able to seek medical attention when warranted and was able to finance the ongoing purchase of cigarettes. *Id*.

The ALJ's findings are supported by substantial evidence. (Tr. 42, 49, 226, 188–89, 236.) However, even if it were determined that the ALJ erred in considering non-compliance, the ALJ did not base his credibility determination solely on Shipp's non-compliance with medical treatment advice and treatment; rather, Shipp's non-compliance was one of several factors the ALJ found to undermine Shipp's credibility, and those factors provide substantial evidence to support his credibility determination. The ALJ found, for example, that Shipp's level of activity was inconsistent with her claims of disability. (Tr. 22, 24–25.) As noted above, Shipp worked on a part-time basis, performed housework, shopped, and ran errands during the time she claimed she was disabled. (Tr. 140, 166, 191.) Inconsistencies between a claimant's testimony about his limitations and his daily activities is a relevant consideration in the evaluation of a claimant's credibility. *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990). The ALJ also found that inconsistencies in Shipp's report of her educational background detracted from her credibility. (Tr. 23.) Shipp, in fact, gave inconsistent reports regarding her education. She reported that she had no education past high school, alternatively reported that she completed twelve hours of college credit, and also reported

10

that she completed two years of college. (Tr. 36, 43, 125.) Finally, the ALJ found that Shipp's allegations of complete disability were not supported by the medical records, which show that her symptoms improved with medication and exercise, and his finding is supported by substantial evidence. (Tr. 191 (symptoms mild with medication); Tr. 189 (benefitted from Cymbalta).)

The mere existence of pain does not establish disability. *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1995) (citation omitted). It is the responsibility of the ALJ and within his discretion to determine whether pain is disabling, and his determination is entitled to considerable deference and should be upheld if supported by substantial evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). In this case, the ALJ's determination that Shipp's pain and other symptoms were not disabling is supported by substantial evidence.

## IV.  Recommendation

The Commissioner's decision of no disability must be affirmed if supported by substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence supports the ALJ's decision in this case. It should therefore be affirmed.

## V.  Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate

judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 30, 2012.

NANCY M. KOENIG
United States Magistrate Judge